## Case No. 4,710.

### FEARING et al. v. CHEESEMAN et al.

[3 Cliff. 91.][1]

Circuit Court, D. Maine. Sept. Term, 1867.[2]

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 13,312.]

Howard and Cleaves, for libellants.
W. L. Putnam, for respondents.

CLIFFORD, Circuit Justice. Appellants contend that they never became liable under the charter-party, because the proofs show, as they insist, that the owners of the vessel never fulfilled the stipulations of the charter-party on their part; that the delay of the vessel in arriving at the place of loading operated as a breach of the contract, and discharged them from all obligations to furnish her with a cargo for the voyage. The terms of the charter-party, properly construed. required the vessel, as a matter of legal implication, to sail from the anchorage where she lay within a reasonable time, and to proceed to the place of loading, without deviation, and with reasonable despatch, the dangers of the seas and navigation excepted.

The parties made no stipulation as to the day the vessel should sail, or as to the time to be allowed for the trip from Boston to Farmingdale, but the true rule of construction in such cases is, that the vessel shall sail within a reasonable time, and proceed with reasonable despatch and without unnecessary deviation to the place of loading, unless delayed by the public enemy or perils of the seas. Whether those qualifications to the obligation of reasonable despatch could be admitted as a matter of mere implication, it is not necessary in this case to determine, as the dangers of the seas and navigation are properly excepted in the charter-party, and there is no evidence in the record applicable to the other branch of the inquiry. The implied obligation of reasonable despatch in proceeding to the place of loading

must be considered in connection with the express exception of the perils of the seas and navigation. Such an implied covenant in a charter-party is not a condition precedent, which if broken will justify the charterer in disregarding all his covenants and promises, unless the delay is so great that it deprives the charterer of the whole benefit of the contract, or entirely frustrates the object he had in view in chartering the vessel. Conditions precedent must be definite, and they are usually express, but it is unnecessary to determine whether they may not also be implied, as I am clearly of the opinion that the covenant of the charter-party in this case, as now construed, if expressed in the instrument, would not amount to a condition precedent within the principle laid down in any well-considered judicial decision, unless it appeared that the delay had the effect to frustrate the voyage. The strongest case construing the covenant of a charter-party as a condition precedent is that of Lowber v. Bangs, 2 Wall. [69 U. S.] 728; but it is obvious that the rule of construction there adopted falls far short of what would be required in this case, in order to give that effect to the implied covenant under consideration. The majority of the court held in that case that the covenant, "ship to proceed from Melbourne to Calcutta with all possible despatch," was a condition precedent to the right of the ship-owner to recover. When the charter-party was executed, the ship was on her passage from New York to Melbourne, and the terms of the instrument expressly required the owners to use the most direct means to forward instructions to the master, ordering it to be fulfilled. Instructions were duly forwarded, but the ship arrived at Melbourne, discharged cargo, and sailed for Manilla before the mail arrived, and in consequence thereof, more than six months elapsed before the ship reached the place of loading. Instead of sailing direct to Calcutta, she went first to Manilla, and it was upon that ground that a majority of the court held that the owners had broken the contract. Decisions of a contrary character were referred to by the appellees, and a minority of the court were unable to agree to the conclusion. Since that time the question has again been considered in one of the English courts. Mac-Andrew v. Chapple, 1 L. R C. P. 643.

The stipulation in that case was, that the steamer then just launched at Newcastle, and not quite fitted for sea, should, on being ready, proceed with all convenient speed to Alexandria, Egypt, and there receive a cargo of cotton, and thence proceed to London or Liverpool, as ordered on signing the bill of lading. The steamer deviated in the trip from Newcastle, and the charterers refused to furnish her with a cargo. The defence was, that the covenant to proceed to the place of loading with all convenient speed,

was a condition precedent; that inasmuch as that covenant was broken by the owners, the charterers were discharged from all obligation to load the steamer; but the court unanimously decided that the phrase was only a stipulation, and not a condition precedent, and that the delay afforded no justification to the freighters for refusing to furnish a cargo, and that his remedy for the damage occasioned by the delay was by a cross-action. "Delay by deviation," said Willes, J., "is the same as delay in starting;" and he held it to be settled law that no delay or deviation which did not entirely frustrate the object the charterer had in view, was a sufficient answer to an action for not loading a cargo, but only gave a cross-action for damages. Neither the language of the charter-party, nor any proper implication from it, affords any support to the theory that the failure of the vessel to proceed with greater despatch to the place of loading was a breach of any condition precedent on the part of the ship-owners, which discharged the charterers from their obligations to load the vessel. The same conclusion must follow whether the correct rule be regarded as that advanced in the case of Lowber v. Bangs [supra], or the one laid down in the more recent case decided in one of the courts of Westminster Hall.

The next suggestion of the appellants is, that the charter-party was not to attach at all, until the vessel arrived at the place of loading, and inasmuch as she did not proceed to that place with reasonable despatch, the alleged contract was never concluded. Support to that proposition is attempted to be derived from the stipulation that the charter should commence when the vessel was ready to load, and notice thereof was given by the master. Undoubtedly the voyage for the transportation of the cargo commenced at that time and place, and it was the commencement of the voyage for the computation of lay-days, but the contract became operative when the charter-party was executed and delivered. The obligation of the ship-owners to put the vessel in a sea-worthy condition, and cause her to sail for the place of loading within a reasonable time, commenced when the charter-party became operative, and continued in force till the covenants were fulfilled. Performance of that implied covenant was as much required by the charter-party as that notice of readiness of the vessel to receive cargo should be given on her arrival at the place of loading. Such notice could not properly be given before the vessel actually arrived, and the implied requirement was, that she should proceed there with reasonable despatch, the dangers of the seas and navigation excepted. Unavoidable delay arising from these causes would not discharge the charterers from their covenant to load the vessel, unless the delay was so great as to frustrate the voyage or deprive the freighter of the benefit of his contract.

Where the delay ensues from unforeseen causes, but the voyage is not frustrated, the charterer is entitled to his claim for damages, as compensation for any injury he may sustain. Freeman v. Taylor, 8 Bing. 124; Clipsham v. Vertue, 5 Adol. & E. (N. S.) 265; Seeger v. Duthie, 8 C. B. (N. S.) 45; Tarrabochia v. Hickie, 1 Hurl. & N. 183; Dimech v. Corlett, 12 Moore, P. C. 227.

The defence that a new charter-party or contract was made, is entirely unsupported by the evidence. When the master gave the required notice that the vessel was ready to receive cargo, the charterers refused to load her, and on the 26th of the same month they telegraphed to the owners that they would "load the vessel at going rates, no other terms, damages or not." The owner of the vessel replied on the same day that they, the charterers, must either load her per the charter-party or pay damages. Responsive to that telegram, the plaintiff answered to the effect, that they would load the vessel for that voyage "at eight dollars, measurement or weight, difference between old and new, charter open, to be settled by the courts or arbitration," without prejudicing the rights of the other party. The final reply of the defendants was as follows: "We accept your proposition; load vessel as per despatch of this date," which closed the telegraphic correspondence. Pursuant to that arrangement of the controversy, the defendants loaded the vessel, and she duly transported the cargo, and made right delivery of the same at the port of destination and discharge. Prompt payment was made of the sum mentioned as freight in the telegraphic correspondence at the place, and within the time originally contracted. The present suit is for the difference between that sum and that stipulated in the charter-party, which it was agreed might be settled by arbitration or by the courts. Unable to agree and unwilling to refer, the parties come here, and it is evident that their legal rights must be determined under the charter-party, as the facts were when the master reported the vessel to the charterers. They made no new charter-party, and it is clear that the controversy then was the same as it is at the present time. The arrangement was made that the vessel should be loaded, and it was agreed that the voyage should not prejudice either party, that is, that their rights should remain unaffected by those subsequent acts, but be determined just as they would be if the defendants had refused to furnish the cargo and employed another vessel for the voyage. In that view the defendants are clearly liable, unless they can show that the master, in failing to report the vessel within a reasonable time, violated some condition precedent in the charter-party, or that the delay was so great as to frustrate the voyage.

The explanations already made show that the first ground of defence fails, and it is equally clear that the second cannot be sustained. When the Star of Hope was reported as ready to receive cargo, it is true that the defendants had employed and loaded another vessel with the cargo of ice intended for the plaintiff's vessel, but on the arrival of the latter vessel they changed the destination of the former, and sent her to another port, in fulfilment of another contract, which they had with the government. But the evidence that the voyage was not frustrated is, that it was fully performed, and the uncontradicted testimony is, that the cargo was duly delivered to the consignees at the port of original destination, and received without any complaint. No particular notice is taken of the causes of delay, as it is agreed that they arose from the perils of the seas, and not from any negligence or wilful default of the master or owners. Suffice it to say that the vessel encountered rough weather in her trip from Boston to Farmingdale, and having sprung a leak before she reached Bath, she was obliged to put back to Portland for repairs. Competent persons were called to determine what repairs were necessary, and they were completed with reasonable despatch.

Decree affirmed, with costs.